UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | |
| v. | Case No. 1:21-cv-11997-AK |
| JAY SCOTT KIRK LEE, GEOFFREY ALLEN WALL, and BENJAMIN THOMPSON KIRK, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

## DEFENDANT GEOFFREY ALLEN WALL'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE PLAINTIFF'S COMPLAINT

SMRH:4895-2309-9949.1

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................ 1

ALLEGATIONS IN THE COMPLAINT ........................................................... 3

    A.    Insufficient Allegations Regarding Wall's Conduct in Connection with Ami James Prior to December 9, 2016 (And Thus Outside the Limitations Period).................... 3

    B.    Vague One-Line Allegation Regarding Ami James Post-December 9, 2016 ............. 5

LEGAL STANDARD ......................................................................................... 6

STATUTE OF LIMITATIONS IN SEC ACTIONS ......................................... 7

ARGUMENT ...................................................................................................... 8

I.     THE SEC'S REQUESTED RELIEF IS ALL TIME-BARRED ......................... 8

II.    THE NDAA CANNOT REVIVE THE SEC'S EXTINGUISHED DISGORGEMENT CLAIMS FOR SCIENTER-BASED OFFENSES ................................................ 10

    A.    There is A Strong Presumption Against Reviving Expired Claims.......................... 11

    B.    Similar to SOX, the NDAA Contains No Express Language to Renew Stale Claims.................................................................................................................. 12

    C.    The SEC Cannot Rely On Its Scant and Insufficiently Pled Allegations About Wall Related to the Sale of Ami James ......................................................................... 15

III.   APPLICATION OF THE NDAA TO REVIVE EXPIRED DISGORGEMENT CLAIMS WOULD VIOLATE THE *EX POST FACTO* CLAUSE .................................... 17

IV.   THE SEC'S REQUEST FOR INJUNCTIVE RELIEF IS UNTIMELY AND BASELESS ............................................................................................. 19

CONCLUSION.................................................................................................. 20

TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*In re ADC Telecommunications, Inc. Sec. Litig.*
  409 F.3d 974 (8th Cir. 2005) .........................................................................12, 14

*Berner v. Delahanty*
  129 F.3d 20 (1st Cir. 1997)......................................................................................6

*De Veau v. Braisted*
  363 U.S. 144 (1960)...............................................................................................17

*Doyle v. Hasbro, Inc.*
  103 F.3d 186 (1st Cir. 1996)..............................................................................7, 15

*Enter. Mortg. Acceptance Co., LLC, Sec. Litig. v. Enter. Mortg. Acceptance Co.*
  391 F.3d 401 (2d Cir. 2004)............................................................................ 12 - 14

*Evans v. Boston Red Sox*
  2014 WL 4966081 (D. Mass. Sept. 30, 2014) .........................................................7

*Foss v. Bear, Stearns & Co., Inc.*
  394 F.3d 540 (7th Cir.2005) .............................................................................12, 13

*Gabelli v. SEC*
  568 U.S. 442 (2013)..........................................................................................1, 8, 9

*Glaser v. Enzo Biochem, Inc.*
  303 F.Supp.2d 724 (E.D.Va. 2003) .......................................................................12

*Greebel v. FTP Software, Inc.*
  194 F.3d 185 (1st Cir.1999).................................................................................7, 9

*Hagenah v. Cmty. Enters., Inc.*
  No. 15-cv-30036, 2016 WL 1170963 (D. Mass. Mar. 23, 2016) .......................7, 10

*In re Heritage Bond Litig.*
  289 F.Supp.2d 1132 (C.D. Cal. 2003) ...................................................................12

*Hughes Aircraft Co. v. U.S. ex rel. Schumer*
  520 U.S. 939 (1997)...............................................................................................14

*Kennedy v. Mendoza-Martinez*
  372 U.S. 144 (1963)...............................................................................................18

*SEC v. Sidoti*
   No. EDCV202178JGBSPX, 2021 WL 1593253 (C.D. Cal. Mar. 19, 2021)............................8

*Kokesh v. SEC*
   137 S. Ct. 1635 (2017) ..........................................................................1, 8, 9, 18, 19

*Landgraf v. USI Film Prods.*
   511 U.S. 244 (1994)....................................................................11, 12, 14, 17

*Lattab v. Ashcroft*
   384 F.3d 8 (1st Cir. 2004)..........................................................................11, 12

*Lieberman v. Cambridge Partners, L.L.C.*
   432 F.3d 482 (3d Cir. 2005)..........................................................................12

*Lorillard v. Pons*
   434 U.S. 575 (1978)....................................................................................13

*Lynce v. Mathis*
   519 U.S. 433 (1997)....................................................................................17

*Maldonado v. Dominguez*
   137 F.3d 1 (1st Cir. 1998)..........................................................................15

*Massachusetts v. Schering-Plough Corp.*
   779 F. Supp. 2d 224 (D. Mass. 2011) .........................................................18

*Ora Catering, Inc. v. Northland Ins. Co.*
   57 F. Supp. 3d 102 (D. Mass 2014) ............................................................7

*Peralta v. Gonzales*
   441 F.3d 23 (1st Cir. 2006)..........................................................................11

*Quaak v. Dexia S.A.*
   357 F. Supp. 2d 330 (D. Mass. 2005) .........................................................14

*SEC v. Bio Def. Corp.*
   No. CV 12-11669-DPW, 2019 WL 7578525 (D. Mass. Sept. 6, 2019), *aff'd sub nom.*
   *SEC v. Morrone*, 997 F.3d 52 (1st Cir. 2021)...................................................19, 20

*SEC v. Cohen*
   332 F. Supp. 3d 575 (E.D.N.Y. 2018) .............................................7, 8, 17, 19, 20

*SEC v. Collins & Aikman Corp.*
   524 F. Supp. 2d 477 (S.D.N.Y 2007)............................................................15

*SEC v. Druffner*
   353 F. Supp. 2d 141 (D. Mass. 2005) .........................................................15

*SEC v. Durgarian*
    477 F.Supp.2d 342 (D. Mass. 2007) ...................................................................7

*SEC v. Fowler*
    6 F.4th 255 (2d Cir. 2021) ...............................................................................8

*SEC v. Jones*
    300 F.Supp.3d 312 (D. Mass 2018) ...............................................10, 17, 20

*SEC v. Kokesh*
    884 F.3d 979 (10th Cir. 2018) ........................................................................9

*SEC v. Lee*
    720 F.Supp.2d 305 (S.D.N.Y. 2010)..........................................................15, 16

*SEC. v. Patel*
    2008 WL 782483 (D.N.H. Mar. 24, 2008) .....................................................7

*SEC v. Sargent*
    329 F.3d 34 (1st Cir. 2003).............................................................................20

*SEC v. Sharp*
    No. 21-cv-11276-WGY (D. Mass. August 5, 2021).................................3, 10

*SEC v. Tambone*
    417 F. Supp. 2d 127 (D. Mass. 2006) ............................................................6

*SEC v. Tambone*
    597 F.3d 436 (1st Cir. 2010)...........................................................................6

*SEC v. Wey*
    246 F. Supp. 3d 894 (S.D.N.Y. 2017)........................................................15, 16

*Shay v. Walters*
    702 F.3d 76 (1st Cir. 2012).............................................................................6

*Swack v. Credit Suisse First Bos.*
    383 F. Supp. 2d 223 (D. Mass. 2004) ..........................................................14

*United States v. Badger*
    818 F.3d 563 (10th Cir. 2016) ......................................................................18

Statutes

28 U.S.C. § 2462..............................................................................1, 8, 10, 11, 19

National Defense Authorization Act § 6501.............................2, 8, 10 – 13, 19

Sarbanes-Oxley Act .............................................................................12 – 14

Securities Act of 1933 § 5(a) and (c) ....................................................................................6, 8, 9

Securities Act of 1933§ 17(a) .........................................................................................6, 8, 10, 15

Securities Exchange Act of 1934 § 10(b) .......................................................................6, 10, 15

United States Code Title 28 § 1658(b) .........................................................................12

Other Authorities

Fed. R. Civ. Proc. Rule 9(b).........................................................................1, 6, 7, 9, 10

Fed. R. Civ. Proc. 12(b)(6) ............................................................................................6, 7

Fed. R. Civ. Proc. 12(f).................................................................................................7

Fed. R. Civ. Proc. 65(d) ...............................................................................................20

# INTRODUCTION

The Securities and Exchange Commission's (the "SEC's") claims against Geoffrey Allen Wall ("Wall") are time-barred and must be dismissed.  The bulk of the SEC's specific allegations about Wall relate to conduct that concluded in 2013, well outside the limitations period.  Seeking to stretch the case against Wall into the limitations period, the SEC offers threadbare, imprecise allegations that simply do not satisfy the applicable legal standards.

The SEC brought this action against Wall on December 9, 2021, seeking civil monetary penalties, disgorgement, and injunctive relief.  Under 28 U.S.C. § 2462, the SEC had five years from the date the claims first accrued to file its action.  The Supreme Court has held that this five-year limitations period applies not only to the requested civil monetary penalties, but also to disgorgement.  *Gabelli v. SEC*, 568 U.S. 442, 445 (2013); *Kokesh v. SEC*, 137 S. Ct. 1635, 1639 (2017).  And, because the SEC's requested injunctive relief functions as a penalty, it also subject to Section 2462's five-year limitations period.

Under Rule 9(b), the SEC must allege fraud with particularity.  As many courts have noted, the First Circuit has been notably strict and rigorous in applying the Rule 9(b) standard in securities fraud actions.  The SEC alleges no facts with the requisite specificity to support a claim that Wall committed securities law violations after December 9, 2016; its claims, therefore, must be dismissed as untimely.

Although the Complaint makes sweeping allegations about a "pump and dump" scheme involving multiple individuals and entities over many years, the SEC's claims against Wall are specific to his alleged involvement in the sale of two penny stocks: Nutranomics Inc. ("Nutranomics", previously known as Buka Ventures, Inc.) and Ami James Brand, Inc. ("Ami James", previously known as Quorum Corp).  As to Nutranomics, the alleged misconduct ended long ago in 2013.  (Complaint, ¶ 100.)  Thus, any claims arising from Nutranomics are plainly time-

barred.  As to Ami James, the SEC fails to plead with the requisite specificity any illegal conduct by Wall in the five years before the Complaint was filed (i.e., from December 9, 2016 to December 9, 2021).  Apparently recognizing this fundamental flaw, the Complaint includes several glaringly inexact allegations about Wall's alleged conduct in 2016 that do not come close to satisfying the stringent standard in the First Circuit to plead fraud with particularity.  In a seemingly last-ditch effort, the SEC includes at the end of its Complaint a chart that lists Wall and a co-defendant under the heading "Complicit Defendants" in connection to purported sales of Ami James stocks from "02/25/2016 -12/19/2016."  This conclusory one-line entry reference sets forth no specificity whatsoever as to what, exactly, Wall allegedly did as late as December 2016 to make him "complicit."  Labeling Wall a "Complicit Defendant" in a single entry in a chart undoubtedly cannot meet the securities fraud pleading standard in this Circuit.

Since the SEC has not pled specific conduct by Wall within the five-year limitations period, the SEC will likely seek to salvage its case by attempting to rely on the newly enacted Section 6501 of the National Defense Authorization Act (the "NDAA") (codified at 15 U.S.C.A. § 78u(d)(8)(A)(ii)) ("Section 6501").  Where it applies, the NDAA  extends the statute of limitations to ten years for some – but not all – of the relief the SEC seeks.  The NDAA's new limitations period, however, cannot and does not revive claims that had already expired when it became effective on January 1, 2021.  Congress did not authorize retroactive application of the NDAA to expired claims and the *ex post facto* clause prohibits such application.  The SEC is out of time and it cannot use the NDAA to rewind the clock.

Wall respectfully requests this Court grant his motion to dismiss the Complaint with prejudice, or in the alternative, strike as improper any requested relief this Court concludes to be time-barred.

## ALLEGATIONS IN THE COMPLAINT

The SEC alleges that Wall and his co-defendants Benjamin Thompson Kirk ("Kirk") and Jay Scott Kirk Lee ("Lee") (collectively, "Defendants") engaged in a multi-year "pump and dump" scheme of penny stocks designed to defraud investors and conceal Defendants' purported control of shares in certain public companies.  (Complaint, ¶¶ 1, 2, 4.)  According to the Complaint,  to do so the Defendants enlisted the illicit services of an offshore platform (the "Sharp Platform") headed by Frederick L. Sharp ("Sharp") and operated by his subordinates ("Sharp Personnel").[1]  (*Id.*, ¶¶ 2, 4, 28-51.)

Specific to Wall, the SEC alleges that his primary role in the scheme involved arranging the sale of stocks, including ensuring that the penny stocks up for sale were first "positioned" (i.e., that the shares were split into less-than-5% blocks to allegedly disguise Defendants' ownership of these shares).  (*Id.*, ¶¶ 42, 43.)  Although the Complaint briefly refers to a longer list of penny stocks, the Complaint only includes factual averments with regard to Nutranomics and Ami James.[2]  As noted in the Introduction, all conduct alleged in connection with Nutranomics sales ended in 2013.

With respect to Ami James, the Complaint asserts only imprecise, vague and unparticularized allegations about Wall.  Critically, none of these allegations establish that Wall did anything illegal after December 9, 2016.

### A.    Insufficient Allegations Regarding Wall's Conduct in Connection with Ami James Prior to December 9, 2016 (And Thus Outside the Limitations Period)

Even for the period before December 9, 2016 (i.e., more than five years before the Complaint

---

[1] The SEC has a pending case against Sharp and the Sharp Personnel.  *SEC v. Sharp*, No. 21-cv-11276-WGY (D. Mass. August 5, 2021) ("Sharp Matter").

[2] In a separate chart provided in Paragraph 113 of the Complaint, the SEC alleges several other penny stock schemes involving Wall.  Notably, all of these sales are time-barred as they only allege sales up to 2015 (except for the Ami James, which allegedly had sales from "02/25/2016 – 12/19/2016").

was filed), the SEC does not provide sufficiently particularized allegations against Wall with regard

to Ami James.  The SEC alleges that Wall and Lee used "similar methodology employed with [the

sale of] Nutranomics" but does not plead specific facts  (e.g., specific communications, dates of

conduct, etc.) illustrating Wall's involvement with Ami James.  (*Id*., ¶ 103.)  The SEC alleges that

Wall orchestrated and arranged for millions of Ami James stocks to be sold on the Sharp Platform

and reissued in "tranches of less than five percent of the Issuer's outstanding stock, and deposited

with various offshore firms."  (*Id.*)  However, the only communication the Complaint cites to connect

Wall to the alleged "positioning" of these stocks is a May 28, 2015 communication, in which Wall

asked a single question.  The communication as quoted in the Complaint includes the SEC's own

insertion of bracketed information not originally part of the communication.  This gratuitously

inserted information – offered without any support at all – imbues more significance to the

communication than the words actually used:

| | |
|---|---|
| Kelln: | Not sure I've updated u but the quor dwacs [share allocations to various Sharp Vehicles] have ALL settled now.  Whoot! |
| Associate (ccing Wall): | whoo ty very much!!! |
| Wall (to Associate): | Excellent, and with [Swiss Administrative/Trading Platform #1] also? |
| Associate: | [Yes,] Except for that one position with the new acct with [Swiss Administrative/Trading Platform #1's Head Trader].  That is still pending |

(*Id*., ¶ 104, May 28, 2015 communication).  From this one question, the SEC alleges that all

positioning of Ami James stocks were "effected at Wall's behest."  (*Id*., ¶ 106.)  There is also no

information identifying which specific offshore firms were used to house the Ami James stocks.

(*Compare id.*, ¶ 64 (identifying off-shore Sharp vehicles allegedly utilized for the Nutranomics sale).

The Complaint then alleges that "in or about May 2016," Wall and Lee "controlled at least

72.7% . . .of the Ami James' tradeable shares."  (*Id*., ¶ 107.)  There are no allegations indicating how

Wall came to "control" or own these shares (i.e., either by asking a Sharp Personnel to specifically

-4-

set aside these shares for sale for his benefit and/or by purchasing these shares from the Sharp

Platform before reselling them through the Sharp Platform); or what allocation of stocks are

controlled by Wall, as opposed to Lee.  The SEC then also alleges without factual support that Wall

promoted Ami James in the middle of the stock dump in July 2016.  According to the Complaint,

Wall funded a $25,000 wire via a Sharp Platform vehicle to a media company in the penny stock

space.  (*Id*., ¶ 109.)  However, the SEC does not allege that this wire had anything to do with Ami

James or any other specific stock, the purpose of the wire or whether the media company was

allegedly disseminating any information that was misleading or incorrect.  The SEC also attempts to

demonstrate Wall's participation in the Ami James stock sales by alleging that he received

compensation from an Ami James account at some unspecified time in 2016.  (*Id*., ¶ 110.)  There are

no allegations of the approximate months and dates related to these payments nor the purpose of the

payments.  And, noticeably absent are any allegations demonstrating that Wall (via, for example,

specific communications with various Sharp Personnel) authorized, directed or controlled the sale

process, and that he did so with any knowledge of misconduct.  Even if there were such allegations

for the period before December 9, 2016, such allegations are outside the limitations period.

**B.      Vague One-Line Allegation Regarding Ami James Post-December 9, 2016**

As noted above, in a separate section of the Complaint, near the end, the SEC alleges in a

chart in Paragraph 113 that the "Date Range of Stock Sales" (a chart heading) for Ami James was

from "02/25/2016 – 12/19/2016" and that Wall and Lee were the "Complicit Defendants" (a chart

heading).  This appears to be the SEC's attempt to save its untimely case against Wall.  However,

chart headings are not well-pled particularized allegations.  The SEC does not allege any factual

averments that Wall authorized, directed, participated in or received funds for every stock sale (by

specific dates) related to Ami James from December 9, 2016 to December 19, 2016.  Without such

allegations, the alleged date range cannot establish that Wall committed any securities violations after December 9, 2016.

Finally, the SEC alleges generally that a Sharp Platform vehicle from time to time transferred funds to a "Bahamian Firm" of which Wall was allegedly a client.  (*Id.*, ¶ 48.)  One of these transfers occurred via a June 2017 wire.  (*Id.*, ¶ 49.)  The Complaint sets forth no allegations that the wire is connected in any way to Ami James, Nutranomics, or any other security for that matter.  Nor does the Complaint set forth the amount of the wire, the date of the wire, or whether Wall had any knowledge of or caused the wire to be made.

Based on these time-barred, flimsy and conclusory allegations, the SEC charges Wall with violations of Section 17(a)(1) and (3) of the Securities Act (Count I), Section 10(b) of the Exchange Act and Rules 10b-5(a) and (c) thereunder (Count II); and Section 5(a) and (c) of the Securities Act (Count III).

## <u>LEGAL STANDARD</u>

A court can dismiss a complaint, in whole or in part, where plaintiff "failed to state a claim upon which relief can be granted."  Fed. R. Civ. Proc. 12(b)(6).  A dismissal is proper if the pleadings fail to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."  *Berner v. Delahanty*, 129 F.3d 20, 25 (1st Cir. 1997) (internal citations omitted).  In assessing the sufficiency of the complaint, the Court must "strip away and discard the complaint's  conclusory legal allegations."  *Shay v. Walters*, 702 F.3d 76, 82 (1st Cir. 2012).  In other words, when the complaint's factual averments are "too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture," dismissal is warranted.  *SEC v. Tambone*, 597 F.3d 436, 441 (1st Cir. 2010).

Where securities fraud is alleged, the SEC must satisfy the heightened pleading standard of Rule 9(b), which requires the SEC to "state with particularity the circumstances constituting fraud or

mistake."  Fed. R. Civ. Proc. 9(b); *see also SEC v. Tambone,* 417 F. Supp. 2d 127, 130–31 (D. Mass. 2006) (heighted pleading standard applies to securities fraud).  The First Circuit "has been notably strict and rigorous in applying Rule 9(b) standard in securities fraud actions." *SEC v. Durgarian*, 477 F.Supp.2d 342, 348 (D. Mass. 2007) (citing *Greebel v. FTP Software, Inc.,* 194 F.3d 185, 193 (1st Cir.1999)).  To satisfy the standard, the SEC must specify the "time, place, and content of the alleged false or fraudulent representations."  *Doyle v. Hasbro, Inc*., 103 F.3d 186, 194 (1st Cir. 1996).  "Allegations of fraud must be organized into discrete units that are, standing alone, each capable of evaluation."  *SEC. v. Patel*, 2008 WL 782483, at \*5 (D.N.H. Mar. 24, 2008).  Such claims must be well-pled and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Evans v. Boston Red Sox*, 2014 WL 4966081 (D. Mass. Sept. 30, 2014).  Conclusory allegations and references to "plans and schemes" are insufficient.  *United States ex rel. Kelly v. Novartis*, et al., 827 F.3d 5, 13 (1st Cir. 2015).

A defendant "can [also] raise the statute of limitations as an affirmative defense in a Rule 12(b)(6) motion to dismiss, so long as the underlying factual basis for the defense is clear on the face of the plaintiff's pleadings."  *Ora Catering, Inc. v. Northland Ins. Co.*, 57 F. Supp. 3d 102, 107 (D. Mass 2014) (internal quotations omitted).  If all remedies/relief sought are time-barred, the claims themselves are also untimely.  *See SEC v. Cohen*, 332 F. Supp. 3d 575, 587-88 (E.D.N.Y. 2018).

Further, a court can strike portions of a complaint that are immaterial or impertinent.  Fed. R. Civ. Proc. 12(f).  This includes unviable prayers for relief.  *See e.g.*, *Hagenah v. Cmty. Enters., Inc.*, No. 15-cv-30036, 2016 WL 1170963, at \*8 (D. Mass. Mar. 23, 2016) (granting motion to strike a plaintiff's request that the court impose civil penalties where such remedy was not available to the plaintiff).

## STATUTE OF LIMITATIONS IN SEC ACTIONS

The Supreme Court firmly established that all claims for civil monetary penalties and

disgorgement by the SEC are subject to the five-year limitations period set forth in 28 U.S.C. § 2462. *Gabelli v. SEC*, 568 U.S. 442, 445 (2013); *Kokesh v. SEC*, 137 S. Ct. 1635, 1639 (2017) ("Disgorgement in the securities-enforcement context is a 'penalty' within the meaning of § 2462, and so disgorgement actions must be commenced within five years of the date the claim accrues.").

In 2021, Congress passed Section 6501 of the National Defense Authorization Act (the "NDAA") (codified at 15 U.S.C.A. § 78u(d)(8)(A)(ii)) ("Section 6501"), which extended the limitations period for disgorgement claims for certain scienter-based offenses and equitable remedies (e.g., injunctions and bars) to ten years. NDAA § 6501(a)(3). The NDAA made no changes to the limitations period for non-scienter-based securities violations (e.g., Sections 17(a)(3) and Section 5 of the Securities Act, as asserted by the SEC) which is still five years as set forth in *Kokesh*. *SEC v. Sidoti*, No. EDCV202178JGBSPX, 2021 WL 1593253, at *6 (C.D. Cal. Mar. 19, 2021) (noting that non-scienter claims are still subject to the five-year statute of limitations). Nor does the NDAA affect the five-year limitations period for applicable civil monetary penalties. *SEC v. Fowler*, 6 F.4th 255, 260, n.5 (2d Cir. 2021) ("[t]he SEC's claim for civil penalties . . . remains subject to § 2462's five-year statute of limitations"). Importantly, nothing in the NDAA nor any reference in the NDAA's legislative history suggest that Congress intended the NDAA to apply retroactively to restore stale claims.

## ARGUMENT

### I.     THE SEC'S REQUESTED RELIEF IS ALL TIME-BARRED

The SEC had five years "from the date when the claim first accrued" to file an action against Wall. 28 U.S.C. § 2462; *Gabelli,* 568 U.S. at 445; *Kokesh,* 37 S. Ct. at 1639. This five-year limitations period also applies to the SEC's requested injunctive relief because it functions as a penalty. *Cohen*, 332 F. Supp. 3d at 594 (dismissing SEC's untimely request for an injunction where it found the injunction to be penal). The limitations period commenced when the "allegedly

fraudulent conduct occur[ed]," not when the SEC discovers the conduct, *Gabelli,* 568 U.S. at 448,

and when the SEC had a "complete and present cause of action," *SEC v. Kokesh,* 884 F.3d 979, 982

(10th Cir. 2018).

To have a viable claim, the SEC must allege violations by Wall after December 9, 2016

(within the five-year period preceding the filing of the Complaint) with the specificity required by

Rule 9(b). *See Greebel,* 194 F.3d at 193 (rigorously demanding securities fraud be pled with

requisite particularity). The only allegation the SEC asserts against Wall in that timeframe related to

any securities is the one-line date range entry from the chart in Paragraph 113 near the end of the

Complaint. This one entry states that from "2/25/2016 – 12/19/2016" there were sales of Ami James

penny stocks and lists under the heading titled "Complicit Defendants" Wall and his co-defendant

Lee. Entirely absent are any particularized allegations to implicate Wall in the sale of Ami James

from December 9, 2016 to December 19, 2016. There are no allegations regarding exactly when

these sales took place, date by date; no mention of whether Wall in fact participated in, initiated,

authorized and/or directed any sales from December 9, 2016 to December 19, 2016; nor any

allegations that Wall himself received illicit funds from any sales in December 2016.[3] Moreover,

headings and labels in a chart are not the particularized allegations required by the heightened

pleading standard of Rule 9(b). The label "complicit" cannot substitute for specific allegations

establishing that Wall knew, at the time of any stock sale within the limitations period, that any sale

occurred in a manner violative of the securities laws. The SEC cannot evade such basic pleading

---

[3] Based on these razor thin allegations, the SEC cannot show that Wall was a "necessary participant" or "substantial factor" in the unregistered sale or offer of sale in December 2016 in violation of Sections 5(a) and 5(c) of the Securities Act. *SEC v. Jones,* 300 F.Supp.3d 312, 315-16 (D. Mass 2018) ("[I]t is particularly important that the necessary participant and substantial factor test be carefully applied to each case as to not subject defendants with a *de minimis* or insubstantial role in the securities scheme to strict liability.") (omitting internal citation and quotations).

requirements by simply inserting the conclusory term "complicit" in a chart, devoid of any specific allegations purporting to establish conduct by Wall that makes him "complicit."  The date range listed in the chart is plainly insufficient to plead that Wall committed any securities violations after December 9, 2016.

Apparently well aware that is has acted too late, the SEC includes a throw-away allegation that a June 2017 wire (with no exact amount alleged) from a Sharp Platform vehicle was sent to a "Bahamian Firm," of which Wall was allegedly a client.  (Complaint, ¶ 49.)  There is no allegation that Wall actually received the funds from this wire, only that it was sent to the Bahamian Firm. Notably, the SEC does not allege that this wire is related to Ami James or any other stock.  Nor does it so much as assert that the payment was in any way connected to securities fraud.  Moreover, the law is clear that receipt of payment is not actionable securities fraud.  *See SEC v. Jones*, 300 F. Supp. 3d 312, 316 & n.7 (D. Mass. 2018) (noting that receipt of payments, by itself, is insufficient to support an inference of securities violation and rejecting as "pretty thin gruel" the SEC's argument that such receipt of payments can restart the five-year clock).

In sum, the SEC wholly failed to sufficiently allege facts demonstrating Wall committed any securities violations in the five years before the Complaint was filed.  The Complaint against Wall should be dismissed, in its entirety, with prejudice, or alternatively, the requested relief should be stricken from the prayer of relief.  *See Hagenah*, 2016 WL 1170963, at *8.

## II.     THE NDAA CANNOT REVIVE THE SEC'S EXTINGUISHED DISGORGEMENT CLAIMS FOR SCIENTER-BASED OFFENSES[4]

The SEC's claims for relief are all time-barred by Section 2462's five-year limitations period. With no sufficiently-pled allegations regarding Wall's misconduct after December 9, 2016, the SEC

---

[4] The SEC's scienter-based claims for disgorgement are Section 17(a)(1) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder (Counts I and II).

will likely try to exploit the NDAA's amended ten-year limitations period to revive its disgorgement claims arising from scienter-based offenses. [5]   The SEC's effort must fail because the NDAA cannot restore claims that have already expired.

"[C]ongressional enactments . . . will not be construed to have retroactive effect unless their language requires this result."  *Landgraf v. USI Film Prods.*, 511 U.S. 244, 264 (1994).  To assess whether Congress intended the NDAA's amendment to the disgorgement limitations period to have retroactive application, the Court must follow the two-step test established in *Landgraf*.  *Lattab v. Ashcroft*, 384 F.3d 8, 14 (1st Cir. 2004).  First, the Court must determine whether Congress clearly stated an intent for retroactive application; second, absent such clear direction from Congress, the Court must determine whether the application of the NDAA will have an "impermissibly retroactive effect."  *Id.*  To these two inquiries, the Court will find that Congress was silent regarding the NDAA's retroactive effect, and applying the NDAA to revive the SEC's stale disgorgement claims based on the scienter-based offenses against Wall will indeed have an impermissible retroactive effect that Congress clearly never intended.

A.      **There is A Strong Presumption Against Reviving Expired Claims**

There is a strong presumption barring revival of stale claims.  Rooted in this presumption is the age-old notion that "[e]lementary considerations of fairness, dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly."  *Landgraf*, 411

---

[5] The SEC asserted this argument in the *Sharp* Matter in response to the motions to dismiss filed in that case.  However, during the January 20, 2022, hearing on the motions, the Court expressed significant concerns about the viability of the SEC's case and the applicability of the NDAA's new ten-year limitation period to the SEC's claims, stating "it seems to [the Court] the defendants have the better of it with respect to which statute applies [i.e., Section 2462 or the NDAA] . . . . [M]y expressed instinct that the statute of limitations here is five years, not ten years." (*Sharp* Matter, Dkt. 193, pp. 6, 23).  The Court stated it would issue a written opinion, but has not done so at this time.

U.S. at 265.  To overcome this presumption and apply a statute retroactively, a court must have "firm conviction" that the statute can only be read to permit such application.  *Lattab*, 384 F.3d at 14.  This standard is "demanding" and requires an "express congressional command."  *Peralta v. Gonzales*, 441 F.3d 23, 29 (1st Cir. 2006) (quotations omitted).  If there is any ambiguity, the Court must rule in favor of the "presumption that Congress did not intend the statute to apply retrospectively."  *Lattab*, 384 F. 3d at 14.  By adhering to this presumption, courts avoid any unwarranted "retroactive effect" on a defendant's rights.  *Landgraf*, 511 U.S. at 280.

Courts also recognize the presumption against retroactivity in securities fraud cases, refusing to "revive previously stale securities fraud claims."  *Enter. Mortg. Acceptance Co., LLC, Sec. Litig. v. Enter. Mortg. Acceptance Co.*, 391 F.3d 401, 406 (2d Cir. 2004); *see also Lieberman v. Cambridge Partners, L.L.C.*, 432 F.3d 482, 490-91 (3d Cir. 2005); *Foss v. Bear, Stearns & Co., Inc.,* 394 F.3d 540, 542 (7th Cir. 2005); *In re ADC Telecommunications, Inc. Sec. Litig.*, 409 F.3d 974, 977 (8th Cir. 2005); *Glaser v. Enzo Biochem, Inc.,* 303 F.Supp.2d 724, 734 (E.D.Va. 2003); *In re Heritage Bond Litig.,* 289 F.Supp.2d 1132, 1148 (C.D. Cal. 2003).  In all these cases, courts rejected any notion that an amendment to the limitations period in the Sarbanes-Oxley Act ("SOX") applied to time-barred claims.  Specifically, the courts found that the statute did not "unambiguously" restore dead claims.  *Enterprise Mortgage*, 491 F.3d at 406; *Lieberman*, 432 F.3d at 490-91.

**B.    Similar to SOX, the NDAA Contains No Express Language to Renew Stale Claims**

SOX and the NDAA contain nearly identical language with respect to applicability of their amended limitations periods.  The fact that courts have overwhelmingly ruled that SOX does not restore stale claims, clearly demonstrates that Congress, in borrowing much of the same language from SOX, did not intend the NDAA to revive claims that had expired prior to its enactment.  With regard to their respective application language, SOX states: "EFFECTIVE DATE.—The limitations

period provided by section 1658(b) of title 28, United States Code, as added by this section, shall apply to all proceedings addressed by this section that are **commenced on or after the** [July 30, 2002,] **date of enactment of this Act**." *Enterprise Mortgage*, 491 F.3d at 406 (emphasis added). Similarly, the NDAA provides: "APPLICABILITY.—The amendments made by subsection (a) shall apply with respect to any action or proceeding that is pending on, or **commenced on or after**, **the** [January 1, 2021] **date of enactment of this Act**" NDAA § 6501(b) (emphasis added). The only difference between the two statutes is that the NDAA applies to cases "pending" as of the date of enactment, but such language is of no consequence here as this action was not pending as of January 1, 2021.

        In belatedly bringing this action, it appears the SEC intends to rely on the "on or after, the date of enactment" language in the NDAA. However, like in the cases interpreting SOX, this language does not breathe life back into extinguished claims. Ruling on this very issue, the Second Circuit explained its refusal to retroactively apply SOX to revive stale claims. *Enterprise Mortgage,* 391 F.3d at 407. The Second Circuit observed that SOX "contain[ed] none of the unambiguous language" necessary to restore untimely claims. *Id.* at 406-407. The Court then further explained that had Congress intended to revive expired claims, it could have used explicit language as it did historically, such as: "the Corporation may bring an action . . . on such claim without regard to the expiration of the statute of limitation applicable under State law" or "no limitation shall terminate the period within which suit may be filed." *Id.* at 407 (quoting Riegle–Neal Interstate Banking and Branching Efficiency Act of 1994, Pub. L. No. 103–328, § 201(a), 108 Stat. 2338, 2368; Higher Education Technical Amendments of 1991, Pub. L. No. 102–026, § 3, 105 Stat. 123, 124). Finding sound reasoning in the Second Circuit's opinion, many courts, including courts in this

District, have followed suit. [6] *See e.g.*, *Foss*, 394 F.3d at 542 ("We find [*Enterprise Mortgage*] persuasive and have nothing to add to the ... explanation."); *In re ADC Telecommunications,* 409 F.3d at 978 (following in accord with the majority of courts' decisions that SOX has no retroactive effect on stale claims); *Quaak v. Dexia S.A.*, 357 F. Supp. 2d 330, 337 (D. Mass. 2005) ("This Court agrees with the overwhelming majority of courts, which have found that Sarbanes–Oxley did not revive time-barred claims."); *Swack v. Credit Suisse First Bos.*, 383 F. Supp. 2d 223, 234 n.10 (D. Mass. 2004) ("I cannot find that Congress intended § 804 of [SOX] to apply to actions that were time-barred on July 29, 2002.")  Thus, given the virtually identical applicability language in SOX and the NDAA, the Court should find that the NDAA's language similarly does not revive stale claims.

Moreover, any retroactive application of the NDAA to restore stale claims will impermissibly impair rights.  *Enterprise Mortgage*, 391 F.3d at 406 (a statute cannot "impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed").  Indeed, such application is the very impermissible retroactive effect that the Supreme Court has repeatedly ruled against.  *Landgraf*, 511 U.S. at 280 (resurrection of previously time-barred claims has impermissible retroactive effect because it "increase[s] [a defendant's] liability for past conduct"); *Hughes Aircraft Co. v. U.S. ex rel. Schumer*,

---

[6]Presumably Congress in drafting the NDAA's language was well aware of how courts have interpreted SOX.  *See Lorillard v. Pons*, 434 U.S. 575, 580 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute.").  Congress, as it did in other statutes noted above, had the power to use different language if it wanted the NDAA to explicitly have retroactive effect regardless of past statute of limitations restrictions.  Congress did not do so here, instead used similar language in SOX for the NDAA.  Moreover, retroactivity was not even referenced in the NDAA's legislative history.  *Cf. Enterprise Mortgage*, 391 F.3d at 408 (noting that nothing in the legislative history "indicates that the extension of the statute of limitations was intended to revive expired claims or that Congress was even considering such a thing").

520 U.S. 939, 950 (1997) ("[E]xtending a statute of limitations after the pre-existing period of limitations has expired impermissibly revives a moribund cause of action.").

## C.     The SEC Cannot Rely On Its Scant and Insufficiently Pled Allegations About Wall Related to the Sale of Ami James

The SEC will likely try to argue that claims arising from misconduct related to Ami James in 2016 should get the benefit of the NDAA's new ten-year limitations period because such claims had not expired (under the previous five-year limitations period) when the NDAA went into effect on January 1, 2021. Such argument is unavailing here as the SEC's allegations related to Ami James are insufficiently pled and cannot salvage the SEC's stale claims. (*See* Complaint, ¶¶ 103 -111.)

As discussed above, the SEC must plead securities fraud with the requisite particularity, including alleging "time, place and content of the alleged false or fraudulent representations." *Doyle*, 103 F.3d at 194. The SEC purports to allege claims for scheme liability under Section 17(a) and Rules 10b-5(a) and (c) of the securities laws against Wall. For the SEC to succeed on its claims, the Complaint must include an "'allegation that the defendant (1) committed a manipulative or deceptive act (2) in furtherance of the alleged scheme to defraud, (3) [with] scienter.'" *SEC v. Wey*, 246 F. Supp. 3d 894, 915–16 (S.D.N.Y. 2017) (citing *SEC v. Lee*, 720 F.Supp.2d 305, 325 (S.D.N.Y. 2010)). In the absence of manipulation or a deceptive act, "a claim based on mere 'participation' is legally insufficient." *SEC v. Collins & Aikman Corp.*, 524 F. Supp. 2d 477, 484–86 (S.D.N.Y 2007). Additionally, the SEC must plead facts giving rise to a "strong inference of" of fraudulent intent, to establish scienter, which is defined as "a mental state embracing intent to deceive, manipulate, or defraud." *Maldonado v. Dominguez*, 137 F.3d 1, 9 (1st Cir. 1998); *SEC v. Druffner*, 353 F. Supp. 2d 141, 149 (D. Mass. 2005).

The SEC's threadbare allegations against Wall related to the Ami James stock sales contain no particularized allegations sufficient to implicate Wall. Though the SEC alleges, in conclusory

fashion, that Wall and Lee arranged for the fraudulent sale of Ami James, there are no specific communications or actions by Wall indicating that he spearheaded or authorized such sale and notably no allegations that Wall committed any fraudulent act with requisite scienter.

At most, the SEC asserts a May 28, 2015 communication to demonstrate that Wall "positioned" Ami James stocks for sale "in less-than-five-percent tranches, with various Sharp Vehicle's offshore accounts." (Complaint, ¶ 104). However, claims based on any 2015 allegations are plainly time-barred as they expired before the NDAA's enactment. Still, even setting aside the time-bar issue (as discussed above), the communication itself is far too vague to show Wall's involvement in "positioning" the stocks and contains the SEC's insertion of facts not actually included in the communication. The communication mostly involved Sharp Personnel and another Sharp client (which the SEC vaguely alleges was positioning the stocks on Wall's behalf) discussing that the Ami James shares are "settled." The SEC then inserted in brackets its own self-serving interpretation that "settled" meant "[share allocations to various Sharp Vehicles]." Wall's participation in the exchange was simply to ask if shares were on a certain trading platform, which by itself does not constitute an illegal or deceptive act. Yet, from this one communication, the SEC makes an illogical leap and claims that all improper allocations of shares related to Ami James were "all effected at Wall's behest" sometime in 2015. (*Id.*, ¶ 106). The SEC jumps to this conclusion without alleging a single communication or actual conduct by Wall to illustrate that he directed, instructed, and or authorized the "positioning" of these specific shares. *Cf. Wey*, 246 F. Supp. 3d at 917 (scheme liability requires that that there be an actual commission of a deceptive act); *Lee*, 720 F. Supp. 2d at 338 (plaintiff must specify the deceptive or manipulative act performed).

The remaining few allegations against Wall in 2016 are even more deficiently pled. First, the SEC does not sufficiently allege that Wall engaged in any misleading promotion of Ami James.

Though the SEC avers that Wall funded a wire in July 2016 to a Sharp Platform vehicle that worked in the penny stock promotion space, the SEC does not assert that the wire was specifically tied to the promotion of Ami James or any other stock, or that the wire funded promulgation of any misleading statements.  (*See* Complaint, ¶ 109.)  Second, Wall's purported receipt of monies from the Ami James account is not a securities violation in of itself, especially where the Complaint is devoid of any particularized allegation that Wall controlled, directed, or substantially participated in the sale of Ami James.  (*See* Complaint, ¶ 109 110); *Jones*, 300 F. Supp. 3d at 316 & n.7 (noting that receipt of payments, by itself, is not a securities violation).  All stock sales were made through the Sharp Platform via Sharp Personnel and Sharp vehicles, not through Wall.[7]  Also notably missing are the specified months and dates regarding when Wall received these payments and allegations regarding the purpose of these payments.

Importantly, the passive receipt of payments cannot restart the clock.  *Jones*, 300 F. Supp. 3d 312, 316-317 (rejecting as "pretty thin gruel" the SEC's argument that receipt of payments can restart the five-year clock);  *see also Cohen*, 332 F. Supp. 3d at 591 ("[T]he statute of limitations runs from when Defendants allegedly engaged in misconduct, not when they received compensation in connection with that misconduct.").  As a result, none of the allegations in 2016 against Wall can form the basis for extending the clock on the SEC's expired disgorgement claims.

## III.  APPLICATION OF THE NDAA TO REVIVE EXPIRED DISGORGEMENT CLAIMS WOULD VIOLATE THE *EX POST FACTO* CLAUSE

A law violates the *ex post facto* clause if it  "attaches new legal consequences to events completed before its enactment," *Landgraf*, 511 U.S. at 270, including by increasing the punishment

---

[7] The SEC alleges that Wall and Lee "controlled at least 72.7% . . .of the Ami James' tradeable shares," but again this is conclusory without facts (1) indicating (how and when) Wall actually owned these shares before reselling them through the Sharp Platform; and (2) showing the allocation of stocks controlled by Lee as opposed to Wall.

for the offense, *Lynce v. Mathis*, 519 U.S. 433, 441 (1997).  Though typically applied in the criminal context, a civil law can violate the *ex post facto* clause if it is both retroactive and penal.  *De Veau v. Braisted*, 363 U.S. 144, 160 (1960) ("The mark of an *ex post facto* law is the imposition of what can fairly be designated punishment for past acts.").  Significantly, the Supreme Court ruled that SEC disgorgement is a penalty and "penalty is a punishment, whether corporal or pecuniary, imposed and enforced by the State, for a crime or offen[s]e against its laws." *Koshesh*, 137 S. Ct. at 1639, 1641.

To assess whether remedies are penal in nature, courts look to the following seven factors: "[w]hether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned." *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168–69 (1963).  To "transform the [law] into a criminal penalty," only four of the factors must be met.  *Massachusetts v. Schering-Plough Corp.*, 779 F. Supp. 2d 224, 238 (D. Mass. 2011).

Here, the SEC's desired application of the NDAA to revive stale disgorgement claims is clearly penal as such application meets more than four factors outlined in *Kennedy*:

- Disgorgement award can involve and lead to an "affirmative disability or restraint" (*i.e.*, incarceration).  Where defendants have failed to pay per disgorgement orders, courts have used their civil contempt powers to incarcerate the defendants.  *See e.g., United States v. Badger*, 818 F.3d 563, 575 (10th Cir. 2016) ("A disgorgement order . . . is enforced through the contempt power of the court including incarceration.").
- Disgorgement has historically been regarded as punishment.  The Supreme Court considered SEC disgorgement to be a penalty because "it is imposed for punitive purposes." *Kokesh*, 137 S. Ct. at 1639, 1643.
- NDAA's plain language expressly states that only disgorgement claims based on scienter-based offenses will be subject to the ten-year limitations period.  NDAA § 6501(a)(3).
- Disgorgement in SEC securities enforcement cases serves as a "deterrence" which is one of the "traditional aims of punishment." *Schering-Plough Corp.*, 779 F. Supp. 2d at 235-36; *see*

*also Kokesh*, 137 S. Ct. at 1643 ("[C]ourts have consistently held that the primary purpose of disgorgement orders is to deter violations of the securities laws by depriving violators of their ill-gotten gains.")

- Disgorgement funds oftentimes are paid directly to the United States Treasury, rather than to victims. The Supreme addressed this in *Kokesh,* stating "[e]ven though district courts may distribute the funds to the victims, they have not identified any statutory command that they do so. . . . [and] [w]hen an individual is made to pay a noncompensatory sanction to the Government as a consequence of a legal violation, the payment operates as a penalty." *Kokesh*, 137 S. Ct. at 1644.

Thus, retroactive application of the NDAA to obtain disgorgement is penal in nature as the Supreme Court has already found in *Kokesh*. Any such application will violate the *ex post facto* clause and is prohibited.

## IV.   THE SEC'S REQUEST FOR INJUNCTIVE RELIEF IS UNTIMELY AND BASELESS

The SEC seeks the following injunctive relief: (1) enjoining Wall from violating securities laws and participating in certain purchases and sales of securities; and (2) barring Wall from participating in an offering of penny stock. (Complaint, pp. 38-39.) The SEC will likely argue that because the injunctive relief sought is equitable in nature, no limitations period should apply. This relief, however, would clearly constitute a penalty and hence is subject to the five-year limitations required by Section 2462. [8]

Indeed, a court in this District previously assessed the type of injunctive relief the SEC seeks here and found that when applying *Kokesh* principles, "there can be no doubt that both the injunction and . . . bars sought here are penalties, and subject to the five-year limitations period." *SEC v. Bio Def. Corp.*, No. CV 12-11669-DPW, 2019 WL 7578525, at *11 (D. Mass. Sept. 6, 2019), *aff'd sub nom. SEC v. Morrone*, 997 F.3d 52 (1st Cir. 2021). The *Bio Defense* Court reasoned, based on

---

[8] Although the NDAA creates a 10-year limitations period for injunctions (*see* NDAA § 6501(a)(3)), that provision cannot be used to revive time-barred claims for the same reasons addressed above with respect to disgorgement arising from scienter-based offenses.

*Kokesh*, that because the injunctive relief serves to essentially redress public wrong and deter defendants (not to compensate victims), it qualifies as a penalty.  *Id.*  Another court also observed that an injunction is penal if, as here, it mostly requires defendants to comply with federal securities law like all other persons.  *See Cohen*, 332 F. Supp. 3d at 594 (dismissing SEC's untimely request for an injunction where it found the injunction to be penal).  As the *Cohen* Court explained:

> [T]he requested injunction would operate at least in part as a penalty. Based exclusively on allegations that Defendants engaged in misconduct five to ten years before the SEC filed suit, the Commission seeks to enjoin them to comply with the securities laws they allegedly violated before. As the parties agree, this injunction would impose no duties on Defendants beyond their existing duty to obey the law. What this injunction would do, however, is mark Defendants as lawbreakers and stigmatize them in the eyes of the public.  *Cohen*, 332 F. Supp. 3d at 594 (internal quotation marks, internal citations, and alterations omitted).

Like in *Bio Defense* and *Cohen*, all misconduct that the SEC purportedly seeks to prevent and deter occurred more than five years ago.  Thus, the SEC's request for injunctive relief is time-barred.

Importantly, to the extent the Court finds that the requested injunctive relief is not penal, the SEC still cannot pursue a permanent injunction or a bar where "there is nothing to enjoin" and where it has not alleged that "future violations" on Wall's part are likely to occur.  *Jones*, 300 F.Supp.3d at 318; *SEC v. Sargent*, 329 F.3d 34, 39 (1st Cir. 2003); *see also* Fed. R. Civ. Proc. 65(d).  In other words, there is no allegations here of any risk of ongoing or future misconduct by Wall to enjoin. Without such allegations, the request for injunctive relief is simply unwarranted, especially when all alleged ended long ago.  Accordingly, the SEC's request for injunctive relief should be dismissed, or alternatively, stricken from the prayer of relief.

## **CONCLUSION**

For the foregoing reasons, Wall respectfully requests that the Court grant his motion to dismiss the Complaint in its entirety with prejudice, or in the alternative, strike any relief it concludes are time-barred and unwarranted.

Dated: August 8, 2022

Respectfully submitted,

By: ___/s/ Michael J. Gilbert_____

Michael J. Gilbert (NY Bar No. 2755429)
Lisa Lewis (BBO No. 647337)
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
   Including Professional Corporations
30 Rockefeller Plaza
New York, NY 10112
Email: mgilbert@sheppardmullin.com

Jennifer N. Le (Cal. Bar No. 307755)
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
   Including Professional Corporations
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Email: jle@sheppardmullin.com

*ATTORNEYS FOR DEFENDANT GEOFFREY ALLEN WALL*

## CERTIFICATION OF SERVICE

I hereby certify pursuant to Local Rule 5.2(b), a true copy of the above document was

served upon the counsel of record for each party through the CM/ECF system on August 8, 2022.

By: ___/s/ Michael J. Gilbert_____
      Michael J. Gilbert