# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

SECURITIES AND EXCHANGE
COMMISSION,

                          **Plaintiff,**

     v.

JAY SCOTT KIRK LEE, GEOFFREY
ALLEN WALL, and BENJAMIN
THOMPSON KIRK,

                        **Defendants.**

Civil Action No. 21-CV-11997-AK

## PLAINTIFF'S OPPOSITION TO DEFENDANT GEOFFREY ALLEN WALL'S
## MOTION TO DISMISS THE COMPLAINT

i

## TABLE OF CONTENTS

1. INTRODUCTION…………………………………….……………...………...1

2. FACTUAL BACKGROUND ……………………………………….……………...………...1

3. PROCEDURAL POSTURE ………………………………………………….……………...………...2

4. ARGUMENT ……………………………………………………….……………...………...3

    I.    MOTION TO DISMISS STANDARD …………………………………….……..3

    II.    THE SEC SUFFICIENTLY PLED VIOLATIONS OF THE FEDERAL SECURITIES LAWS ……………………………………………3

    III.    THE SEC'S CLAIMS ARE NOT TIME BARRED …...……………….…………7

        1. The NDAA's 10-year period governs the SEC's claims for disgorgement and injunctive relief. …...…………………………...……7

        2. Wall's contrary arguments lack merit. …...……….………….................9

            a.    Section  2462 does not apply. …...…………..……….................9

            b.    Sarbanes-Oxley cases are inapposite. …........…………….......12

            c.    The Application of the NDAA Does not Violate the *Ex Post Facto* Clause. …...………………………..…………16

5. CONCLUSION ………………………………………………….…...………......19

# TABLE OF AUTHORITIES

**Cases**                                                                                         **Pages**

*Agency Holding Corp. v. Malley-Duff & Assoc., Inc.*,
    483 U.S. 143 (1987)………………………………………………..…………………15


*Bank Markazi v. Peterson*,
    578 U.S. 212 (2016)…..………………………………………..…………….………11


*Brown Rudnick LLP v. Christof Indus. Global GmbH*,
    No. 1:21-cv-11694-IT, 2022 WL 1746770 (D. Mass. May 31, 2022)….……………..…….7


*Calder v. Bull*,
    3 U.S. 386 (1798)………………………..…………………………………...…………..16


*Dumont v. Reily Foods, Co*,
    934 F.3d 35 (1st Cir. 2019)…………………………….……......….…………………...3


*Gabelli v. SEC*,
    568 U.S. 442 (2013)...………………….…………….……..…...…………………………8, 10


*Gagliardi v. Sullivan*,
    513 F3d 301 (1st Cir. 2008)……………….…………………...…….…………3


*Greebel v. FTP Software, Inc.*,
    194 F.3d 185 (1st Cir. 1999)…………………………………….…..……..……5


*In re Enterprise Mortgage Acceptance Co., LLC, Securities Litigation*,
    391 F.3d 401 (2d Cir. 2005)…………..……………………...…………………………......12


*Kennedy v. Mendoza-Martinez*,
    372 U.S. 144, 168 (1963)………………….…………………...…….…………….....18


*Kokesh v. SEC*,
    137 S.Ct. 1635 (2017)…………………….…………………...…………………9-10, 17


*Lamb v. United States*,
    977 F.2d 1296 (8th Cir.1992)…………………………………….…………………..10

*Landgraf v. USI Film Products,*
　　511 U.S. 244 (1994)……………………………………………………....……*passim*

*Liu v. SEC,*
　　140 S. Ct. 1936 (2020)…………………………………………...…………………………..17-19

*Lorenzo v. SEC,*
　　139 S. Ct. 1094 (2019)..………………………………………...…………......…………..4

*Maldonado v. Fontanes,*
　　568 F.3d 263 (1st Cir. 2009)..………………………………………...…………...3

*Martin v. Hadix,*
　　527 U.S. 343 (1999)……………………………………………...…………………….13

*Mullikin v. United States,*
　　952 F.2d 920 (6th Cir. 1991)..……………………...………………….………...10

*Plaut v. Spendthrift Farm, Inc.,*
　　115 S.Ct. 1447, 1458, 514 U.S. 211 (U.S.Ky.,1995)..…………...…..………………11-12, 15

*Rodriguez-Ortiz v. Margo Caribe, Inc.,*
　　490 F.3d 92 (1st Cir. 2007)…..…………………………………………...…..3

*SEC v. Ahmed,*
　　2021 WL 2471526 (D.Conn. June 16, 2021)……………..………………..11, 16

*SEC v. Bartek,*
　　484 F. App'x 949 (5th Cir. 2012)……………………..………………………….9

*SEC v. Blackburn,*
　　15 F.4th 676 (5th Cir. 2021)……..……………………………..……………...…....19

*SEC v. Druffner,*
　　353 F. Supp. 2d 141 (D. Mass. 2005)……………………..…..…….…………………...5

*SEC v. Durgarian,*
　　477 F.Supp.2d 342 (D. Mass 2007)…………...……..…..…………………..……….4

*SEC v. Fowler*,
  6 F.4th 255 (2d Cir. 2021)……………………………………….…………………9-10

*SEC v. Frederick L. Sharp, et al*,
  No. 1:2021-cv-11276-WGY (D. Mass)……………...….…………………………………...1

*SEC v. Gallison*,
  No. 15 CIV. 5456 (GBD), 2022 WL 604258 (S.D.N.Y. Mar. 1, 2022)……………......…9-11, 17

*SEC v. Gentile*,
  939 F.3d 549 (3d Cir. 2019)………………………………………………………..9

*SEC v. Genaudio, Inc.*,
  32 F.4th 902 (10th Cir. 2022)………………….………...….…...………………...18

*SEC v. Graham*,
  823 F.3d 1357 (11th Cir. 2016)…………………...………….…………………...9

*SEC v. Hallam*,
  42 F.4th 316 (5th Cir. 2022)…………………………...…………….……………..10-11

*SEC v. Kellen*,
  2021 WL 4907238 (C.D.Cal. Sept. 14, 2021)………………………………………11, 16-18

*SEC v. Markel*,
  No. 2:20-cv- 00502 (C.D. Cal. 2020)…………………………………….……………..18

*SEC v. Morrone*,
  997 F.3d 52 (1st Cir. 2021)……………………………………………….…………9

*SEC v. Navellier & Assoc's, Inc.*,
  2021 WL 5072975 (D. Mass. Sept. 21, 2021)……………...........……………..…………11, 14

*SEC v. Quinlan*,
  373 F. App'x 581 (6th Cir. 2010)………………………………...…………….……..10

*SEC v. Spartan Sec. Group, Ltd.*,
  No. 8:19-cv-448-VMC-CPT, 2022 WL 3224004 (M.D. Fla. Aug. 10, 2022)...10-11, 14, 17, 19

*SEC v. Tambone*,
  550 F.3d 106 (1st Cir. 2008)……………………...……………………………………9, 15

*SEC v. The Legacy Group Inc., et al.*,
    No. 21-cv-01404 (D. Colo. June 11, 2021)………….…………………..…………….....18

*Smith v. Doe*,
    538 U.S. 84 (2003)………………………….…..…………………….…………………17

*SPARTA Ins. Co. v. Pennsylvania General Ins. Co.*,
    No. 21-11205-FDS 2022 WL 3214947 (D. Mass. Aug 9, 2022)………………..…………….3

*United States v. Bank*,
    965 F.3d 287 (4th Cir. 2020)……………………………………………………17-18

*United States v. Dyer*,
    908 F.3d 995 (6th Cir. 2018)……………………………………………………17-18

*United States v. Gartner*,
    93 F.3d 633 (9th Cir. 1996)……………………..…………………………….....17

*United States v. Melvin*,
    918 F.3d 1296 (11th Cir. 2017)……………..…………………………………17

*United States v. Van Waeyenberghe*,
    481 F.3d 951 (7th Cir. 2007)……………………………………...……….17

**<u>Statutes</u>**

15 U.S.C. §77q(a)………………………………………………………….4

15 U.S.C. §78j(b)……………………………………………………………4

15 U.S.C. 78u(d)(5)……………………………………………….……8

15 U.S.C. 78u(d)(7)……………………………………………….……8

15 U.S.C. §78u(d)(8)………………………………………....………….14

15 U.S.C. 78u(d)(8)(A)(ii)………………………………….……....10

15 U.S.C. 78u(d)(8)(B)………………………..………………….…….....10

**Rules**

17 C.F.R. §240.10b-5(a)……………..…………………………………………………………….4

17 C.F.R. §240.10b-5(c)……………..…………………………………………………………….4

**Public Laws**

Pub. L. No. 116-283, § 6501,
    134 Stat. 3388 (2021)………..………………………………………………...………9, 11

Pub. L. No. 116-283, § 6501(b)
    134 Stat. 3388 (2021)…..………..………………………...………………………..11

## INTRODUCTION

Plaintiff Securities and Exchange Commission (the "SEC" or "Commission") submits this opposition to defendant Geoffrey Allen Wall's ("Wall") motion to dismiss the Complaint. *See* Dkt. Nos. 15, 16.  Wall erroneously contends that the SEC's claims fall outside a five-year statute of limitations and that the SEC has failed to plead its claims against Wall with particularity, in violation of Federal Rule of Civil Procedure 9(b).  Wall's contentions are without merit.  First, the SEC's Complaint details Wall's fraudulent scheme with particularity as required by Rule 9(b).  Second, the Commission seeks disgorgement and other equitable relief against Wall — and Congress unambiguously gave the Commission authority to do so for a 10-year period after the latest date on which a violation that gives rise to the claim occurs.

## FACTUAL BACKGROUND

On December 9, 2021, the SEC sued Wall and others for engaging in a sophisticated, multi-year, multi-national attack on United States financial markets and retail investors.  *See* Dkt. No. 1 ("Complaint").  Their scheme defrauded unsuspecting retail investors in this District and elsewhere, as well as transfer agents and brokerage firms, and yielded Wall and his co-defendants as much as $77 million in ill-gotten gains.  *Id.* at ¶¶ 5, 13, 114.  To perpetrate this scheme,  Wall and his co-defendants, Jay Scott Kirk Lee ("Lee") and Benjamin Thompson Kirk ("Kirk"), accessed and used a fraudulent trading platform (the "Sharp Platform") operated by Frederick Sharp ("Sharp"), Zhiying Yvonne Gasarch ("Gasarch"), and Courtney Kelln ("Kelln," collectively with Sharp and Gasarch, the "Sharp Group") to facilitate the illegal sale of stock in the public securities markets.[1]  *Id.* at ¶¶ 2, 4, 6-8, 40, 43.  Wall, Lee and Kirk used a variety of

---

[1] The SEC sued Sharp, Kelln, and Gasarch for violations of the federal securities laws on August 5, 2021.  *See SEC v. Frederick L. Sharp, et al,* No. 1:2021-cv-11276-WGY (D. Mass).  That matter is currently pending before the Hon. William G. Young.

Sharp Platform devices throughout their scheme, including encrypted "xPhones," code-named subaccounts for amassing and disbursing their respective ill-gotten gains, and offshore shell-companies to serve as nominal owners of shares they, in actuality, controlled, and in some cases as purported "paying party" for stock promotions they, in actuality, funded.  Complaint at ¶¶ 33-37, 40-45, 69, 103.  The Defendants drew upon their illicit proceeds furtively by having the Sharp Platform wire them out under cover of bogus documentation.  *Id.*  at ¶ 47.  A former stockbroker, Wall's role in the scheme was primarily in orchestrating its trading (or "dumping") side of the scheme, which included first ensuring the various stocks comprising the scheme were positioned, ahead of their promotions' launch, for market sale.  *Id.* at ¶¶ 15, 42.  Defendants Lee and Kirk's role in the scheme primarily consisted of orchestrating the promotion (or "pumping") of the various stocks comprising the scheme.  *Id.*  Utilizing the Sharp Group's methodology, Wall used offshore nominee companies to hold shares of stocks for undisclosed control persons and used an encrypted communications network for the purchasing and depositing of stock in offshore trading platforms.  *Id.* at ¶¶ 40-46.  Wall also directed the Sharp Group to wire ill-gotten gains on illegal stock trades to a Bahamian financial services firm and often created phony invoices and materially misleading documents created to disguise the nature of these financial transactions.  *Id.* at  ¶¶ 47-50.  Using these methods, Wall participated in at least two schemes involving the fraudulent acquisition and sale of stock at inflated prices.  *Id.* at ¶¶ 52-111.

The SEC alleged that Wall (and his co-defendants) violated Sections 17(a)(1) and (3) and Sections 5(a) and (c) and of the Securities Act of 1933 ("Securities Act") and Sections 10(b) of the Exchange Act of 1934 ("Exchange Act") and Rules 10b-5(a) and 5(c) thereunder.

## **PROCEDURAL POSTURE**

On August 8, 2022, Wall filed a motion to dismiss and a memorandum of law in support. *See* Dkt. Nos. 15, Motion to Dismiss, and 16, Brief in Support of Motion ("Wall Br.").  Wall

2

claims that: 1) the SEC has failed to satisfy the pleading standard of Federal Rules of Civil

Procedure 9(b) and 12(b)(6); and 2) the SEC's claims are time-barred because the National

Defense Authorization Act does not apply in this case.

**ARGUMENT**

## I.      MOTION TO DISMISS STANDARD

A Rule 12(b)(6) motion to dismiss a complaint for "failure to state a claim upon which

relief can be granted" tests the sufficiency of the claims in a pleading.  In reviewing such a

motion, the Court must accept as true all well-pled facts and must draw all reasonable inferences

in favor of the non-moving party.  *See Dumont v. Reily Foods, Co*, 934 F.3d 35, 40 (1st Cir.

2019) (the Court must "indulge every reasonable inference in favor of allowing the lawsuit to

proceed") (internal citations and quotations omitted).  Dismissal is appropriate only if the

pleadings fail to support "a plausible entitlement to relief."  *Rodriguez-Ortiz v. Margo Caribe,

Inc.*, 490 F.3d 92, 95 (1st Cir. 2007).  Assessing plausibility within the pleadings is "context-

specific . . . [requiring] the reviewing court to draw on its judicial experience and common

sense."  *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009).  Dismissal is only appropriate

if the complaint fails to set forth "'factual allegations, either direct or inferential, respecting each

material element necessary to sustain recovery under some actionable legal theory.'"  *SPARTA Ins.

Co. v. Pennsylvania General Ins. Co.,* No. 21-11205-FDS, 2022 WL 3214947 at *3 (D. Mass.

Aug. 9, 2022) (quoting *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008)).

## II.     THE SEC SUFFICIENTLY ALLEGED VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Throughout his brief, Wall asserts that the SEC's fraud claims fail to meet the standards set

forth in Federal Rule of Civil Procedure 9(b) because, as Wall contends, the SEC's allegations are

"flimsy and conclusory."  (Wall Br. at 6).  Wall's contentions are meritless.

3

The SEC has alleged violations of Section 10(b) and Rule 10b-5(a) and (c) thereunder, of the Exchange Act and Sections 17(a)(1) and (3) of the Securities Act. Section 10(b) of the Exchange Act and Rule 10b-5 thereunder prohibit any person, in connection with the purchase or sale of any security, from, directly or indirectly: (a) employing any device, scheme or artifice to defraud; or (c) engaging in any act, practice, or course of business that operates as a fraud or deceit upon any person, in connection with the purchase or sale of a security. *See* 15 U.S.C. §78j(b); 17 C.F.R. §240.10b-5(a), (c). Section 17(a) of the Securities Act contains similar prohibitions in the offer or sale of any security. *See* 15 U.S.C. § 77q(a) (1), (3).[2]

The language of these provisions is "expansive" and "capture[s] a wide range of conduct." *Lorenzo v. SEC*, 139 S. Ct. 1094, 1101 (2019). *Lorenzo* defined the term "device," simply as something "devised, or formed by design," defined a scheme as a "project, plan or program of something to be done," and defined an artifice as "an artful stratagem or trick." *Id.* (internal quotations and citations omitted). The Court similarly defined "act" and "practice" broadly to include things done, actions, and deeds. *See id.* Moreover, in scheme liability cases such as this one, the Court should deny a motion to dismiss when the SEC has alleged conduct demonstrating deceptive and manipulative conduct. *See SEC v. Durgarian*, 477 F.Supp.2d 342, 351-352 (D. Mass 2007) (finding that the SEC's allegations of manipulative trading and concealed profits and losses adequately stated a claim under Rules 12(b)(6) and 9(b)).

---

[2] In a footnote, Wall suggests that the SEC also has not sufficiently alleged a claim under Section 5 of the Securities Act. (Wall Br. at 9 n. 3). Wall's cursory arguments are meritless. To state a *prima facia* Section 5 violation, the SEC must allege that: 1) no registration statement was filed or is in effect; 2) the defendant directly or indirectly offered to sell the securities; and 3) the offer or sale was made in connection with the use of interstate communications. *See SEC v. Esposito*, 260 F. Supp. 3d 79, 88 (D. Mass. 2017); *SEC v. Tropikgadget FZE*, 146 F. Supp. 3d 270, 280 (D. Mass. 2015) (citing *SEC v. Spence & Green Chemical Co.*, 612 F. 2d 896, 901-02 (5th Cir. 1980)). The SEC has met these pleading standards regarding the fraudulent schemes involving both Nutranomics (Complaint ¶¶ 52-102) and Ami James (Complaint ¶¶ 103-111). Wall's assertion that the "necessary participant" or "substantial factor" test applies is in apposite as Wall was not an indirect seller. *See SEC v. Jones*, 300 F. Supp. 3d 312, 315-16 (D. Mass. 2018) (applying necessary factor and substantial participant test to investor who solicited new investors on behalf of a promoter, who was offering and selling securities).

Because the SEC's allegations rest in claims of fraud, the SEC must also meet the standards set forth in Federal Rule of Civil Procedure 9(b).  Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  In the First Circuit, courts require that the complaint allege the "time, place, and content of the alleged misrepresentations with specificity."  *SEC v. Druffner*, 353 F. Supp. 2d 141, 148 (D. Mass. 2005) (citing *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 193 (1st Cir. 1999)).  However, as the Court noted in *Druffner*,

> [W]hen information giving rise to securities fraud is exclusively held by defendants, the particularity requirement of Rule 9(b) is relaxed.... [The] plaintiff is required to distinguish among defendants to the extent that they may reasonably be expected to do so, but the complaint need not attribute specific acts to specific defendants if the complaint sufficiently describes the fraudulent acts and provides the individuals with sufficient information to answer the allegations.

353 F.Supp.2d at 149.

The SEC has met these standards.  The SEC alleged that Wall engaged in a single course of conduct extending over a multi-year period to hide his securities in several companies, which lasted from at least 2012 – and from as early as September 2010 – through at least the end of 2016.  Specifically, as part of this long-running scheme, the SEC alleged that Wall was a client of the Sharp Platform by September 2010.  Complaint at ¶ 40.  In September and October of 2010, Wall and Lee collaborated using the Sharp Platform to perpetrate a penny-stock fraud scheme.  *Id.* at ¶¶ 40-41.  Wall, along with his codefendants, used xPhones, encrypted messages, and "handles" to disguise their identity.  *Id.* at ¶¶ 43-45.  Starting in March 2013, Wall and his codefendants participated in a scheme to dump the stock of Nutranomics.  *Id.* at ¶ 52.  Wall reached out to Sharp on or about March 26, 2013, and discussed, using xPhones, handles, and encrypted messages, that Wall was looking for a stock to "dump" as part of a fraudulent scheme to manipulate the trading and price of Nutranomics.  *Id.* at ¶¶ 52-55.  Between March and

September 2013, Wall and Lee deceptively allocated, in tranches of just under 5% of the company's outstanding shares, vast amounts of the Nutranomics stock they controlled. *Id.* at ¶¶ 59-91.  Wall and Lee controlled this stock across various offshore corporations administered by the Sharp Platform and utilized Sharp Platform tools and personnel to inflate artificially the price of the Nutranomics stock before launching a fraudulent promotional campaign touting Nutranomics. *Id.* at ¶¶ 59-91.  Following this fraudulent promotional campaign, between September 13, 2013 and December 2013, Wall, utilizing the tools of the Sharp Platform, sold shares of Nutranomics at inflated prices and received approximately $7.5 million of ill-gotten gains. *Id.* at ¶¶ 95-102.  At no time did Wall or his codefendants file any Schedule 13D or Form 4 concerning their holdings, trading, or agreements concerning Nutranomics stock, thereby depriving investors of material information to which they were entitled by law. *Id.* at ¶73.[3]

As part of the fraudulent scheme alleged by the SEC, the Complaint also contains allegations that from May 2015 through July 2016, using methodology similar to that employed with Nutranomics, Wall participated in the fraudulent unloading, at considerable profit, of stock in a company called Ami James.  Complaint at ¶¶ 103-111.  Specifically, the Complaint alleges that on May 28, 2015, the Sharp Group informed Wall that it had succeeded in moving Ami James stock into offshore accounts in less than 5% amounts. *Id.* at ¶ 104.  Wall participated in an encrypted conversation regarding this information. *Id.*  Utilizing the Sharp Group's tools and Platform, Wall and Lee controlled between 72.7% and 94.49% of Ami James stock by May 2016. *Id.*  Wall, as part of the scheme, failed to disclose this massive ownership stake in an effort to defraud investors. *Id.* at ¶¶ 107-108.  The Complaint further alleges that in July 2016, Wall funded payments to a media company to pay for email promotions of Ami James stock. *Id.*

---

[3] The Complaint includes the CIK numbers of each issuer whose stock formed part of Defendants' scheme – a feature that readily positions the Defendants to access all Commission filings concerning each issuer and to confirm that, as alleged, Defendants never filed a single Schedule 13D or Form 4 concerning any of those stocks.  Complaint at ¶113.

at ¶ 109.  During the promotional campaign that he helped fund, Wall unloaded his vast holdings

of Ami James stock via Sharp Platform tools and the proceeds from these fraudulent sales – the

last of which took place on December 19, 2016 – were distributed to Wall's accounts on the

Sharp Platform.  *Id.* at ¶¶ 110, 113.

      As this demonstrates, the SEC has more than adequately alleged a claim of securities

fraud against Wall under the standards of both Rules 9 and 12.  *See Brown Rudnick LLP v.

Christof Indus. Global GmbH*, No. 1:21-cv-11694-IT, 2022 WL 1746770, at *6 (D. Mass. May

31, 2022) (denying motion to dismiss stating that "[plaintiffs] need not prove that they are likely

to prevail on the merits of their claims; they need only allege facts demonstrating that they have

a *plausible* basis for relief").  The Court should disregard Wall's claims to the contrary.[4]

## III.    THE SEC'S CLAIMS ARE NOT TIME BARRED

### 1.    The NDAA's 10-year period governs the SEC's claims for disgorgement and injunctive relief.

      The SEC filed its complaint against Wall on December 9, 2021, seeking injunctive relief,

disgorgement, and civil penalties.  All of the SEC's claims are timely.

      First, with respect to the SEC's claims for injunctive relief, the SEC seeks three types of

injunctive relief against Wall (*see* 15 U.S.C. 77t(b), 15 U.S.C. 78u(d)(1), Complaint, Prayer for

Relief ¶¶ A-B):  injunctions that prevent Wall from violating various provisions of the securities

laws, an injunction that would prevent Wall from issuing, purchasing and selling stocks in some

situations, and an injunction preventing Wall from participating in penny stock offerings.  All of

---

[4]   The statute of limitations runs from "the latest date of the violation that gives rise to the action."  Exchange Act Section 21(d)(8)(A), 15 U.S.C. 78u(d)(8)(A) (limitations period for disgorgement); *accord* Exchange Act Section 21(d)(8)(B), 15 U.S.C. 78u(d)(8)(B) (limitations period for other equitable remedies run from "the latest date on which a violation that gives rise to the claim occurs").  The latest date of Wall's violations giving rise to this action is December 19, 2016 (Complaint ¶ 20), so under the plain text of the limitations period, claims based on Wall's entire course of conduct is timely.

these claims for injunctive relief are subject to the specific 10-year statute of limitations under Section 21(d)(8)(B) of the Exchange Act.  15 U.S.C. 78u(d)(8)(B) (permitting Commission to seek injunctive relief for claims arising under Exchange Act Section 10(b) or Securities Act Section 17(a)(1) brought "not later than 10 years after the latest date of the violation that gives rise to the action").   The statute expressly reaches the violative conduct in this case, the "latest date" of which occurred as late as 2016, and thus well after December 9, 2011.

The Commission also seeks an order requiring Wall to disgorge ill-gotten gains from the securities law violations.  *See* 15 U.S.C. 78u(d)(5), (d)(7), Complaint, Prayer for Relief ¶ D.  The SEC's disgorgement claim for Wall's fraud violations are also subject to the specific 10-year statute of limitations under Section 21(d)(8)(A)(ii) of the Exchange Act, and thus reaches disgorgement derived from misconduct, the latest date of which ended on or after December 9, 2011:  "[t]he Commission may bring a claim for disgorgement … not later than 10 years after the latest date of the violation that gives rise to the action … if the violation involves conduct that violates … section 78j(b) [Exchange Act Section 10(b)]."  The SEC separately seeks a "civil monetary penalt[y]" against Wall (*see* 15 U.S.C. 77t(d), 15 U.S.C. 78u(d)(3), Complaint, Prayer for Relief ¶ C), which is subject to a 5-year statute of limitations under the general statute of limitations period in 28 U.S.C. 2462, and thus reaches violative conduct that occurred on or after December 9, 2016.  *See* 28 U.S.C. 2462 (providing five-year statute of limitations for any "civil fine, penalty, or forfeiture" unless a more specific statute of limitation is "provided by Act of Congress"); *see also Gabelli v. SEC*, 568 U.S. 442, 445 (2013) (noting that statute of limitations provision in Section 2462 is "not specific … to securities law; it governs many penalty provisions throughout the U.S. Code," and its "origins date back to at least 1839").

Congress provided the 10-year statutes of limitations specifically for injunctive relief and disgorgement under the securities laws as part of The William M. (Mac) Thornberry National

Defense Authorization Act for Fiscal Year 2021 ("NDAA").  *See* Pub. L. No. 116-283, § 6501, 134 Stat. 3388, 4625-26 (2021).  Congress enacted the NDAA nearly a year before the Commission filed this action—on January 1, 2021.  Prior to the NDAA's enactment, the Supreme Court held in *Kokesh v. SEC*, 137 S.Ct. 1635 (2017), that the five-year statute of limitations in 28 U.S.C. 2462 applied to the Commission's disgorgement requests.  Moreover, before the NDAA, the First Circuit held had that Section 2462 "applies only to penalties sought by the SEC, not its request for injunctive relief."  *SEC v. Tambone*, 550 F.3d 106, 148 (1st Cir. 2008), *withdrawn*, 573 F.3d 54 (1st Cir. 2009), *reinstated in relevant part*, 597 F.3d 436, 450 (1st Cir. 2010).[5]

As the First Circuit has recognized, by enacting the NDAA, Congress "changed" the applicable limitations periods for disgorgement and other equitable remedies, thereby supplanting 28 U.S.C. 2462 and the rule announced in *Kokesh*, for scienter-based fraud claims. *SEC v. Morrone*, 997 F.3d 52, 55 n.3 (1st Cir. 2021). Specifically, Congress "extended the statute of limitations for SEC scienter based claims for disgorgement to 10-years and created a 10-year statute of limitations for equitable remedies, including injunctions and bars."  *SEC v. Gallison,* No. 15 CIV. 5456 (GBD), 2022 WL 604258, at *5-6 (S.D.N.Y. Mar. 1, 2022); *see also SEC v. Fowler*, 6 F.4th 255, 260 n.5 (2d Cir. 2021).  However, even after the NDAA, the SEC's claim for civil penalties against Wall under the securities laws "remains subject to § 2462's five-year statute of limitations."  *Fowler*, 6 F.4th at 260 n.5.

### 2.    Wall's contrary arguments lack merit.

### a.    Section 2462 does not apply.

Wall erroneously argues that, despite Congress's enactment of the statutes of limitations

---

[5]  *See also SEC v. Gentile*, 939 F.3d 549, 561–62 (3d Cir. 2019) (Section 2462 inapplicable to SEC's requested injunctions); *SEC v. Graham*, 823 F.3d 1357, 1360-62 (11th Cir. 2016) (same); *but see SEC v. Bartek*, 484 F. App'x 949, 957 (5th Cir. 2012) (unpublished).

in the NDAA, the SEC's claims for injunctive relief and disgorgement are still "subject to the five-year statute of limitations period set forth in 28 U.S.C. § 2642," citing *Gabelli* and *Kokesh*. Wall Br. at 8. Courts refer to Section 2462 as a "catch-all" statute of limitations (*e.g., SEC v. Quinlan*, 373 F. App'x 581, 584 (6th Cir. 2010)), because that provision provides a generic statute of limitations for civil fines, penalties, and forfeitures "[e]xcept as otherwise provided by Act of Congress." When Congress provides otherwise, Section 2462 has no application. For instance, courts apply Congress's specific 10-year statute of limitations period for collecting a tax assessment (26 U.S.C 6502), not the 5-year catch-all period under Section 2462:

> Section 2462, by its express terms, applies only in instances in which Congress has not otherwise provided for a statute of limitations; in the case of Section 6701 penalties, the Court finds that Congress has otherwise provided for a statute of limitations within the Internal Revenue Code [Section 6502] and therefore, Section 2462 has no application.

*Mullikin v. United States*, 952 F.2d 920, 929 (6th Cir. 1991); *accord Lamb v. United States*, 977 F.2d 1296, 1297 (8th Cir.1992) (following *Mullikin*).

Similarly here, the NDAA is an Act of Congress that "otherwise provided" a specific statute of limitations for the Commission's claims for injunctive and disgorgement relief. As the Second Circuit concluded in *Fowler*, the "recent amendment to the Exchange Act took the SEC's claims for disgorgement and injunctive relief outside of the ambit of § 2462" and "imposed a new, ten-year statute of limitations for those claims." *Fowler*, 6 F.4th at 260 n.5 (citing 15 U.S.C. 78u(d)(8)(A)(ii), (B)). Because the statutory language is clear, the court "must apply" it. *SEC v. Hallam*, 42 F.4th 316, 335 (5th Cir. 2022). Accordingly, every court to have considered the question has followed the NDAA's plain legislative command in applying the current limitations period to pending Commission actions. *See, e.g.*, *SEC v. Spartan Sec. Group, Ltd.*, No. 8:19-cv-448-VMC-CPT, 2022 WL 3224008 at *7 (M.D. Fla. Aug. 10, 2022); *Gallison*, 2022 WL 604258, at *6; *SEC v. Kellen*, 2021 WL 4907238, at *4-5 (C.D.Cal. Sept.

14, 2021); *SEC v. Ahmed*, 2021 WL 2471526, at *4 (D.Conn. June 16, 2021).

Wall further asserts that nothing in the NDAA applies "*retroactively* to restore stale claims." Wall Br. at 8 (emphasis added). But the Commission does <u>not</u> here seek to apply the NDAA retroactively to a complaint filed <u>before</u> the NDAA was enacted. The NDAA was enacted on January 1, 2021 (*see* Pub. L. No. 116-283, § 6501), and the Commission commenced this action nearly a year later on December 9, 2021.

In any event, as the Supreme Court has recognized, "a statute of limitations … can be extended … after the cause of the action arose and even after the statute itself has expired." *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 229 (1995). That principle requires application of the NDAA, because that statute provides that "[t]he amendments made [to the Exchange Act] shall apply with respect to any action or proceeding that is pending on, <u>or commenced after</u>, the date of the enactment of this act." Pub. L. No. 116-283, § 6501(b) (emphasis added). The Supreme Court has stated that such language constitutes an "explicit retroactivity command." *See Landgraf v. USI Film Products*, 511 U.S. 244, 255-56 & n. 8 (1994) (stating that the language "all proceedings *pending* on *or commenced* after the date of enactment" amounted to "an explicit retroactivity command") (emphasis added). Following *Landgraf*, courts – including courts within this District – have held that the NDAA's retroactivity language "has the force of law," "makes clear that [the statute] is retroactive" (*SEC v. Hallam*, 42 F.4th 316, 335 & n. 76 (5th Cir. 2022) (quoting *Plaut*, 514 U.S. at 226), and unambiguously provides that the longer limitations periods apply in this action "commenced after" the enactment of the NDAA. *See Spartan*, 2022 WL 3224008 at *10 (applying NDAA retroactively); *Gallison*, 2022 WL 604258 at *5-6 (same); *SEC v. Navellier & Assoc's, Inc.*, 2021 WL 5072975, at *4 (D. Mass. Sept. 21, 2021) (same).

In short, as the Supreme Court explained in *Bank Markazi v. Peterson*, "Congress may

11

indeed direct courts to apply newly enacted, outcome-altering legislation in pending civil cases," and thus logically can direct courts to apply newly enacted legislation to cases filed after a law is passed, like this one.  578 U.S. 212, 229 (2016).  Separation-of-powers principles preclude Congress from "undoing" or "legislatively rescind[ing]" final judgments in cases adjudicated under the previously applicable law (*Plaut*, 514 U.S. at 228-29), but Congress has not sought to do so in the NDAA.

### b.      Sarbanes-Oxley cases are inapposite.

Recognizing Congress's clear intent to make the NDAA retroactive, Wall also attempts to assert that cases analyzing the Sarbanes-Oxley Act ("SOX") bear on the Court's analysis of the NDAA here.  (Wall Br. at 12-15).  Wall's SOX analysis is inapplicable to this case.  SOX amended Section 1658(b) to say that the statute of limitations "shall apply to all proceedings addressed by this section that are commenced on or after the date of enactment of this act." Notably, Section 1658(b) does not refer to pending cases, whereas the NDAA clearly does (*see* 6501(b) of the NDAA: "[t]he amendments made by subsection (a) shall apply with respect to any action or proceeding that is *pending on*, or commenced on or after, the date of the enactment of this act" (emphasis added)).  The absence of the "pending on" language from SOX led the court in *Enterprise Mortg. Acceptance Co. ("Enterprise")*—the case on which Wall rests his argument—to determine that SOX did not retroactively apply.  *See In re Enterprise Mortgage Acceptance Co., LLC, Securities Litigation*, 391 F.3d 401, 406 (2d Cir. 2005). Indeed, the *Enterprise* court specifically distinguished SOX from other Congressionally-enacted amendments that, like the NDAA, applied to pending cases, noting that SOX "contains none of the unambiguous language that the Supreme Court has asserted would amount to an express retroactivity command [because it does not apply to pending cases], *see Landgraf*, 511 U.S. at 255-56 & n.8, 114 S. Ct. 1483 (stating that the language 'all proceedings *pending on* or

12

commenced after the date of enactment' amounted to 'an explicit retroactivity command')." *Id.*
(emphasis in original); *see Martin v. Hadix*, 527 U.S. 343, 354 (1999) (describing the sentence,
"[t]he new provisions shall apply to all proceedings pending on or commenced after the date of
the enactment" as "unambiguously address[ing] the temporal reach of the statute").

The language of the NDAA is identical to that of statutes the Supreme Court has held
applied retroactively, and is readily distinguishable from the SOX amendment that
conspicuously excludes pending cases.

| NDAA, Section 6501(b) | Language approved by the Supreme Court as unambiguously amounting to an express retroactivity command. |
|---|---|
| "The amendments made by subsection (a) shall apply with respect to any action or proceeding that is **pending on, or commenced after,** the date of the enactment of this act." (Emphasis added). | "[A]ll proceedings **pending on or commenced after** the date of enactment . . . ." *Landgraf*, 511 U.S. 255-56 & n.8 (emphasis added).<br><br>"The new provisions shall apply to all proceedings **pending on or commenced after** the date of enactment." *Martin*, 527 U.S. at 354 (emphasis added). |

The fact that Congress clearly stated that the NDAA was to apply to conduct that was
necessarily in the past (such that it was the subject of litigation that could have been pending on
the NDAA's effective date for any length of time) demonstrates its clear intent that the NDAA
have retroactive effect.  Wall's argument that the SEC is seeking to "revive time-barred claims"
conflates causes of action and remedies.  The NDAA broadens the period of time in which the
SEC can seek certain remedies – such as injunctive relief and disgorgement –- in the cases and
as to claims it is otherwise entitled to bring.  Indeed, as a result of the NDAA, Section 21(d)(8)
of the Exchange Act now defines the statute of limitations for disgorgement and injunctive
relief and, by doing so, supersedes the general statute of limitations in Section 2462 and renders
*Kokesh* obsolete.  *See* Exchange Act Section 21(d)(8) [15 U.S.C. §78u(d)(8)]; *see also Spartan*,

2022 WL 3224008 , at *10 ("This case was currently pending as of January 1, 2021, and thus the NDAA applies to it."); *Navellier*, 2021 WL 5072975 at *4 ("[a]s of January 1, 2021, the statute of limitations applicable to disgorgement in this case has been changed to ten years").

The courts in the SOX cases recognize that those amendments "commenced" language is "perhaps most naturally read as applying to any proceeding that is commenced after" enactment, but declined to hold that the "commenced" language was determinative because the SOX amendments "contain[ed] none of the unambiguous language that the Supreme Court has asserted would amount to an express retroactivity command" as in *Landgraf* and *Martin*— namely, that the SOX amendments did not also expressly apply to "pending" cases. *Enter. Mortg.*, 391 F.3d at 406-07. Where the new statute applies only to actions "commencing" after enactment—but does *not* also expressly apply to "pending" cases—courts have been concerned that applying longer periods for actions "commencing" after the amendment could result in a retroactive application that Congress did not intend to cases that were or could have been "pending." But here, that stumbling block to giving the "most natural[] read[ing]" to the term "commenced" has been removed because Congress in the NDAA made the new limitations periods applicable to "pending" cases using unambiguously retroactive language that emulates the language suggested in *Landgraf* and *Martin*. There is thus no basis for concluding that Congress intended to carve out an exception for securities fraud claims that at the time of the NDAA's enactment could have been brought but were not yet commenced. Such claims may have been "moribund" in the SOX context because they had expired and could not be "revived," by SOX amendments that were inapplicable to "pending" claims; but such claims are not "moribund" in this context because the NDAA amendments expressly apply to both pending and future claims. Congress in the NDAA covered the waterfront, giving those amendments **both** clear retroactive applicability (to "pending" cases), **and** clear forward-

14

looking applicability (to cases "commenced" in the future). Wall's fraudulent conduct in this case, the "latest date" of which falls well within 10 years of the date the SEC commenced this case, thus should not escape the SEC's or Courts' watch. In light of the clarity of the language, the dispositive principle here is that "a statute of limitations … can be extended … after the cause of the action arose and even after the statute itself has expired." *Plaut*, 514 U.S. at 229.

Moreover, the concerns animating the SOX cases are not implicated here. The presumption against retroactivity is rooted in "elementary considerations of fairness, which dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly." *Enter. Mortg.*, 391 F.3d at 408 (quoting *Landgraf*, 511 U.S. at 265) (internal editing omitted). But when Wall engaged in his unlawful conduct, it was well recognized, and controlling precedent in this Circuit held, that Section 2462 "applies only to penalties sought by the SEC, not its request for injunctive relief or the disgorgement of ill-gotten gains." *Tambone*, 550 F.3d 106 at 148. There is thus no unfairness in applying the new limitations period to Wall's conduct. Besides, "the arguable unfairness of retroactive civil legislation is not a sufficient reason for a court to fail to give that law its intended scope." *Peterson*, 578 U.S. at 229.

That principle applies with special force in this context. Limitations periods "are creatures of statute, and did not exist at common law." *Agency Holding Corp. v. Malley-Duff & Assoc., Inc.*, 483 U.S. 143, 169 (1987) (Scalia, J., concurring). Deciding what kind of limitations period will better advance competing policy objectives is "quintessentially the kind of judgment to be made by a legislature." *Agency Holding Corp.*, 483 U.S. 143 at 169; *see also Plaut*, 514 U.S. at 228 ("[T]he length and indeed even the very existence of a statute of limitations upon a federal cause of action is entirely subject to congressional control."). Here, Congress has spoken clearly.

15

In contrast, failing to apply the new period to cases like this one would disregard Congress's objective of supplanting Section 2462 and would nullify its legislative judgment to enact a longer limitations period under the NDAA to prosecute frauds.  Indeed, it is not clear under Wall's reading at what point the longer limitations periods in the NDAA would begin to apply in SEC actions—perhaps not until enforcement actions commencing after January 1, 20<u>26</u>, when fraudulent conduct within 10 years (January 1, 2016) would still fall within a 5-year period from the NDAA's enactment (January 1, 2021).  Either way, Wall's reading cannot be reconciled with the Congressional design.[6]

> ### c.   The Application of the NDAA Does not Violate the *Ex Post Facto* Clause.

Additionally, Wall asserts that applying the NDAA and its ten-year statute of limitation to this action would violate the *ex post facto* clause of the Constitution.  Wall Br. at 17-19.  Recognizing that the Supreme Court has construed the *ex post facto* clause in Article I of the Constitution as applicable only to criminal legislation, *see Landgraf*, 511 U.S. at 266 n.19 (citing *Calder v. Bull*, 3 U.S. 386, 390-91 (1798)), Wall contorts the Supreme Court's holding in *Kokesh*, as well as other cases to conclude that disgorgement is "clearly penal."  Wall Br. at 18.  As above, Wall's analysis is wrong.

The Supreme Court has construed the *ex post facto* clause in Article I of the Constitution as applicable only to criminal legislation.  *See Landgraf*, 511 U.S. at 266 n.19 (citing *Calder*, 3 U.S. 386 at 390-91).  The imposition of disgorgement in SEC cases is not tantamount to criminal sanctions that would bring the NDAA under the *ex post facto* clause.  *See Kellen*, 2021 WL 4907238, at *3-5; *see also, e.g.*, *Ahmed*, 2021 U.S. Dist. LEXIS 112987 (finding the *ex post*

---

[6] Wall might contend that the new limitations period applies only to cases like *Ahmed*, cited above, that were brought within the previously applicable limitations period.  But that would mean that identical conduct occurring at the identical time would be actionable in one case, and immune in another.  Nothing in the text of the NDAA supports such anomalous results.

*facto* clause does not apply and ordering an expanded disgorgement award); *Gallison*, 2022 WL 604258 at *5-6 (rejecting argument that ex post facto clause precluded application of the NDAA's extended statute of limitations to disgorgement claims); *Spartan*, 2022 WL 3224004 at *10 (same). As *Kellen* described, "[t]o determine whether a law constitutes forbidden punishment or a civil remedy, the Court must look first to legislative content." *Id.* at *3 (collecting cases). "[O]nly the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Smith v. Doe*, 538 U.S. 84, 92 (2003) (internal quotations omitted). Applying this required analysis, *Kellen* concluded that the "SEC's mechanism for disgorgement—15 U.S.C. §78u(d)—evinces a clear contemplation of disgorgement as a civil remedy." *Kellen*, 2021 WL 4907238 at *4. Indeed, several circuits have held that disgorgement is a civil remedy, not a criminal penalty. *See, e.g., United States v. Bank*, 965 F.3d 287, 296-97 (4th Cir. 2020) (concluding that disgorgement in an SEC action is not a criminal penalty); *United States v. Dyer*, 908 F.3d 995, 1002-03 (6th Cir. 2018) (same); *United States v. Melvin*, 918 F.3d 1296, 1299-1301 (11th Cir. 2017) (same); *United States v. Van Waeyenberghe*, 481 F.3d 951, 958-59 (7th Cir. 2007) (same); *United States v. Gartner*, 93 F.3d 633, 635 (9th Cir. 1996) (same).

*Kokesh* does not help Wall. *Kokesh* only stands for the proposition that disgorgement constitutes a civil penalty for the purposes of the general statute of limitations in 28 U.S.C. 2462 in the absence of a more specific statute of limitations. The Court there emphasized that "[t]he *sole* question presented in this case is whether disgorgement, as applied in SEC enforcement actions, is subject to § 2462's limitation period." *Kokesh v. SEC*, 137 S. Ct. 1635 at 1652 n.3. *Liu* confirmed that *Kokesh* meant what it said. *Liu v. SEC*, 140 S. Ct. 1936, 1946 (2020). Multiple courts have since rejected the precise argument that Wall attempts to make: "*Kokesh* does not hold that disgorgement rises to the level of a criminal penalty. *See Bank*, 965 F.3d at

301 (citation omitted) (quoting with approval the district court's observation that 'because *Kokesh* was expressly limited to the application of 28 U.S.C. § 2642, it did not . . . declare disgorgement to be a criminal punishment'); *Dyer*, 908 F.3d at 1001 (recognizing that the Supreme Court 'did not say [in *Kokesh*] that SEC civil disgorgement is a criminal punishment')." *Kellen*, 2021 WL 4907238 at *4, n.4.

Despite the inapplicability of the *ex post facto* clause, Wall nevertheless contends that the facts in this case meet each factor for assessing whether a remedy constitutes a criminal punishment as set forth in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168, 169 (1963). *See* Wall Br. at 17-19. But, Wall misapplies each factor.

Consideration of the *Kennedy* factors warrants little discussion. First, disgorgement is not a disability or constraint. Second, *Liu* confirmed that courts have *not* historically regarded disgorgement as punishment. 140 S. Ct. 1936 at 1946. To the contrary, *Liu* held that disgorgement is an equitable remedy. *See id.* Third, Wall's assertion that disgorgement comes into play only on a finding of scienter, is indisputably incorrect. *Liu* made clear that "equity courts did not limit profits remedies to particular types of cases." *Id.* at 1944. Courts routinely order disgorgement for non-scienter based violations, such as violations of Sections 5(a), 5(c) and 17(a)(3) of the Securities Act. *See, e.g., SEC v. Genaudio, Inc.*, 32 F.4th 902, 953-54 (10th Cir. 2022); *SEC v. The Legacy Group Inc., et al.*, No. 21-cv-01404 (D. Colo. June 11, 2021); *SEC v. Markel*, No. 2:20-cv- 00502 (C.D. Cal. 2020).

Fourth, contrary to Wall's argument that disgorgement serves as a "deterrence" which is one of the "traditional aims of punishment," (Wall Br. at 18), the Supreme Court has made clear that properly ordered disgorgement in the SEC context is equitable relief that is ordered to reflect equity's "foundational principle" that it "would be inequitable that a wrongdoer should make a profit out of his own wrong." *Liu*, 140 S. Ct. at 1943. Finally, although Wall contends that the

United States Treasury often receives disgorgement rather than the victims (Wall Br. at 19), the SEC in this case would seek to return money to victims of the fraud.  And, in any event, as multiple courts have concluded, distribution of disgorged funds to the Treasury is equitable in appropriate circumstances.  *See Spartan*, 2022 WL 3224008 at *9-10 (ordering disgorged funds to be distributed to the Treasury); *see also SEC v. Blackburn*, 15 F.4th 676, 682 (5th Cir. 2021) ("*Liu* left open" whether disgorged funds can be disbursed to Treasury when "it is infeasible to distribute the collected funds to investors.").

## **CONCLUSION**

For the reasons set forth above, the SEC respectfully requests that the Court DENY Wall's Motion to Dismiss.


Dated:  August 22, 2022                                  Respectfully Submitted:


                                                        */s/ James E. Smith*

                                                        J. Lee Buck, II (D.C. Bar No. 421878)
                                                        James E. Smith (D.C. Bar No. 482985)
                                                        Steven Susswein (D.C. Bar No. 473624)
                                                        Edward B. Gerard (CA Bar No. 248053)
                                                        SECURITIES AND EXCHANGE
                                                        COMMISSION
                                                        100 F Street N.E.
                                                        Washington, DC  20549
                                                        Phone: (202) 551-4598 (Buck direct)
                                                        Phone: (202) 551-5881 (Smith direct)
                                                        Fax: (202) 772-9282(fax)
                                                        buckjl@sec.gov
                                                        smithja@sec.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 22, 2022, a true and correct copy of the foregoing document was filed through the Court's CM/ECF system, and accordingly, the document will be sent electronically to all participants registered to receive electronic notice in this case. A copy will also be sent via first class mail and/or email to those parties who have not yet registered for notice via the Court's CM/ECF system.

Michael J. Gilbert
Sheppard Mullin
30 Rockefeller Plaza
New York, NY 10112-0015
212-896-0611
<u>MGilbert@sheppardmullin.com</u>

Attorney for Defendant Wall.

Date: August 22, 2022                         */s/ James E. Smith*

James E. Smith